**MASELINO IOANE, Plaintiff,**

**v.**

**AIGA TAUTAI O SAMOA, Defendant.**

High Court of American Samoa
Trial Division

CA No. 159-96

July 22, 1997

■■■■■■■■■

■■■■■■■■■

Before KRUSE, Chief Justice, TAUANU`U, Chief Associate Judge, and TUAOLO, Associate Judge.

Counsel: For Plaintiff, Marie Ala`ilima-Lafaele
For Defendant, William H. Reardon

## DECISION AND ORDER

Plaintiff, a local boat builder, sues the defendant, a non-profit organization, for breach of contract. The parties initially entered into a written agreement dated July 22, 1996, whereby plaintiff would build for defendant a Samoan *alia*, a traditional voyaging canoe, in consideration of $10,000 payable in installments of $2,500 according to a certain work progress schedule. The parties subsequently varied the work progress schedule by amending the contract.

By the time the *alia* was launched, August 25, 1996, plaintiff had received only $6,000; the defendant had run out of funds. Plaintiff claims a balance of $4,000 outstanding to date on the aforesaid agreement.

At the launching, the *alia* was dropped and extensively damaged when an inadequately anchored crane, attempting to lower the vessel into the sea, toppled into the water on top of the *alia*. The defendant's president, Sven Ortquist, with a deadline ahead for the *alia's* intended participation at a Polynesian festival to be held in Western Samoa, sought plaintiff's assistance. Plaintiff agreed to do the emergency repairs and in view of defendant's time constraints, he and his crew of four worked 14 hours each day for the next two weeks to get the *alia* ready for the festival. The repairs were completed in time, and the *alia* sailed off to Apia in due course.

Plaintiff tendered to defendant his invoice of $6000 for the emergency repairs to the *alia*. Plaintiff testified that when he had initially raised with defendant's president the matter of his compensation, he was told that they would settle the matter after the repairs. However, no subsequent discussion about his compensation occurred and he therefore billed defendant for the emergency repairs at his customary rate of

97

$50.00 an hour. This invoice, broken down as 120 hours at $50 per hour, remains unpaid.

Defendant by way of defense alleges negligence on plaintiff's part as being the cause of the *alia's* damage at launching. Additionally, defendant counterclaims for certain tools in plaintiff's possession and for a quantity of fine mats and sleeping mats presented by the village of Manono. At trial, defendant also asserted yet another counterclaim alleging damages for faulty workmanship by plaintiff.

■ We conclude that plaintiff is owed $4000 from the initial contract. He fully performed his obligations according to the initial contract and subsequent amendments; he is therefore entitled to the $4000 in unpaid compensation as a matter of contract. *See* RESTATEMENT (SECOND) OF CONTRACTS, § 235 ("Full performance of a duty under a contract discharges the duty."). Additionally, we conclude that plaintiff is entitled to *quantum meruit* compensation for services rendered on the emergency repairs. *See Zuguin v. M/V Captain Souza*, 23 A.S.R.2d 7, 10-11 (Trial Div. 1992). We are satisfied that plaintiff's invoice of the amount of $6000 is neither untoward nor unreasonable, and will award him judgment accordingly.

As to defendant's claims, the tools in plaintiff's possession, a power planer, sander, and jig saw, are readily acknowledged by plaintiff as belonging to defendant and that he is quite willing to part possession with these tools if defendant picks them up. It seems that the lawsuit was the first instance whereby demand was made of plaintiff for the return of the tools. If defendant wants the tools returned, it can simply ask plaintiff for the return of the tools; it does not need a court order to this effect.

■ On defendant's mats cause, we find the evidence insufficient to establish defendant's claim of entitlement to a greater portion of the Manono presentation than the division made by plaintiff. The evidence showed that Manono, an insular village of famed maritime traditions, honored plaintiff as *tufuga*, the craftsman, with a *sua* presentation. The presentation included a quantity of mats which plaintiff subsequently divided by keeping half for him and giving the remainder to defendant. The question of how a customary presentation ought to be divided is hardly an issue for the court.

On defendant's remaining claims, damages for negligence[1] and shoddy workmanship, we hold that defendant failed to discharge its onus of proof. First, there was absolutely no evidence of negligence on plaintiff's part at the ill-fated launching. There was no showing that plaintiff had anything to do with directing the launching. The defendant's shoddy workmanship claim[2] was testimony by Mr. Sepp Steffany that "delamination" was occurring which was resulting in sea water seeping in between the *alia's* hull and its fiberglass skin. Another witness, Mr. Ortquist, a renowned traditional master-carver with a background in small boat building, posited that such "delamination" was prone to occur if the hull's "stringers" were not correctly aligned. He testified that he had noticed at the outset of construction that some of the stringers were crooked, but nevertheless declined to say anything, apparently not wanting to second guess a fellow craftsman. Following the close of testimony, the court ordered written closing arguments from the parties and visited the *alia*, to see for itself what a "stringer" looked like and to observe the claimed "delamination." From visual inspection, sea water separation was not readily apparent. However, Mr. Steffany pointed to uniformly round dark spots on the hull over regularly spaced nail markings.

On the extent of defendant's tendered proofs, we are not persuaded on the "delamination" damage claim. The dark spots we viewed looked too uniform and too even in appearance; they looked more like deliberate markings rather than randomly resulting evidence of natural damage arising in conjunction with shoddy workmanship.[3] While Mr. Steffany

---

[1] Although the negligence claim as pled in defendant's answer was erroneously styled a defense rather than a counterclaim, T.C.R.C.P. Rule 8(c) permits the court to treat the pleading as if there had been a proper designation where a party mistakenly designates a counterclaim as a defense. *Jennings v. Jennings*, 22 A.S.R.2d 10, 11 (Land & Titles Div. 1992).

[2] This claim, as above noted, was not raised on the pleadings, however, this claim was introduced at trial without objection. Under T.C.R.C.P. Rule 15(b), the Court may treat an unpled issue tried without objection as if it had been actually raised on the pleadings. *Aloipo v. Moananu*, 21 A.S.R.2d 69, 70 (Trial Div. 1992).

[3] When plaintiff submitted his written final argument, he also tendered an affidavit proffering his rebuttal of defendant's "delamination" claim. He deposed that he had only become aware of what defendant's "delamination" claim was all about when the court viewed the *alia*. He further refuted the claimed water-damage areas as merely being resultant dark spots caused by the spreading of the "microballoon/resin mixture" he had applied to cover over the area where he had stapled "veneer" to the hull. Plaintiff claims that these dark spots are at worst cosmetic and do not undermine the integrity and soundness of the hull.

99

might be in the business of supplying paints and epoxies to local boatbuilders, he acknowledged that he is not a boat builder. In the same vein, defendant's offer of proof on damages, a claim by Mr. Steffany of $10,000 to cover "delamination" restorative costs, was nothing more than a guess without foundation.

On the foregoing, judgment will enter in favor of plaintiff against defendant in the sum of $10,000 plus court costs.

It is so Ordered.